NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2681
_____

BAIRON RAMOS-PADILLA,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A206-798-821)
Immigration Judge: John B. Carle
_____

Submitted under Third Circuit LAR 34.1(a)
On April 16, 2020

Before: CHAGARES, SCIRICA and ROTH, <u>Circuit Judges</u>

(Opinion filed  January 4, 2021)

_____

OPINION*

_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

ROTH, Circuit Judge

Bairon Ramos-Padilla petitions for review of a final order of removal. The Board of Immigration Appeals held that it did not have general authority to administratively close his case and denied his claims for asylum, withholding of removal, and protection against torture. He has subsequently been removed from the country and been denied the relief for which he sought administrative closure. As a result, his motion for administrative closure is moot. His challenge to the denial of his withholding claim fails on the merits. We will dismiss his petition in part and deny it in part.

I.[1]

Ramos-Padilla is a native and citizen of Honduras who entered the United States without inspection at the age of seventeen. He was detained by immigration officials and placed in removal proceedings, which were accelerated after he pled guilty to charges of offensive touching. In his immigration proceedings, he applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). He claimed that he would be persecuted if sent back to Honduras because he has been an orphan since he was eight years old, after his mother died and his father abandoned him.

---

[1] Because we write primarily for the parties, we only discuss the facts and proceedings to the extent necessary for resolution of this case.

He also applied for status as a Special Immigrant Juvenile (SIJ) with the United States Citizenship and Immigration Services (USCIS).[2] A Maryland court issued SIJ predicate custody to an adult Maryland resident who had cared for Ramos-Padilla since 2016. Ramos-Padilla simultaneously petitioned the immigration court to administratively close his case while USCIS adjudicated his SIJ application.[3] The IJ declined to close his case, noting his criminal record, his delay in seeking SIJ classification, and the speculative nature of being granted SIJ status. After a merits hearing, the IJ denied his application for asylum, withholding of removal, and protection under CAT, and ordered him removed. The BIA dismissed his appeal. In September 2018, he was removed to Honduras after this Court vacated a temporary stay of removal. We also remanded the case to the BIA to more fully consider Ramos-Padilla's arguments in light of new Board precedent.[4] On June 24, 2019, the BIA again dismissed his appeal. Ramos-Padilla petitioned for review.[5] USCIS formally denied his application for SIJ status while his petition was pending before us.

---

[2] As relevant here, a Special Immigrant Juvenile has been placed under the custody of an individual appointed by a state court because reunification with his parents is not viable and it would not be in the juvenile's best interest to be returned to his home country. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c). If USCIS grants SIJ status, the juvenile may seek lawful permanent residency. 8 U.S.C. §§ 1101(a)(27)(J), 1255(h).

[3] Administrative closures hold cases in abeyance, typically "to await an action or event that is relevant to immigration proceedings but is outside the control of the parties or the court and may not occur for a significant or undetermined period of time." *Matter of Avetisyan*, 25 I&N Dec. 688, 692 (BIA 2012).

[4] *Ramos-Padilla v. Att'y Gen*, C.A. No. 18-1053 (order entered Jan. 3, 2019).

[5] Ramos-Padilla does not challenge the BIA's determination that his application for asylum was untimely and not excused by changed or extraordinary circumstances. Nor does he challenge the denial of his CAT claim.

II.[6]

A. Administrative Closure

The IJ declined to administratively close his case while his SIJ status was being decided by USCIS.  The BIA affirmed, holding that IJs and the Board do not have the general authority to administratively close a case in light of the Attorney General's opinion in *Matter of Castro-Tum*.[7]  Ramos-Padilla asks us to adopt the position of the Court of Appeals for the Fourth Circuit in *Romero v. Barr*, and overturn the Attorney General's decision.[8]  Such a result would permit IJs and the Board to administratively close cases as they had done prior to *Castro-Tum*.

The question of whether *Castro-Tum* is good law must wait for another day as we lack subject matter jurisdiction to decide that issue here.  Ramos-Padilla's request for administrative closure became moot once he was removed from the country pursuant to a final order of removal.[9]  "Administrative closure is a procedural convenience," intended to "temporarily remove[] a case from an immigration judge's calendar or from the

---

[6] The BIA had jurisdiction over Ramos-Padilla's appeal pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15.  We have jurisdiction over final orders of removal under 8 U.S.C. § 1252(a).

[7] 27 I&N Dec. 271, 292 (A.G. 2018) (holding that immigration judges and the BIA lack the general authority to administratively close cases).

[8] 937 F.3d 282, 297 (4th Cir. 2019) (rejecting *Castro-Tum* and reasoning that regulations "unambiguously confer upon IJs and the BIA the general authority to administratively close cases"); *see also Morales v. Barr*, 963 F.3d 629, 639-41 (7th Cir. 2020) (rejecting *Castro-Tum* and reasoning that the Attorney General improperly attempts to create a new regulation "under the guise of interpreting a regulation") (*amended by* 973 F.3d 656 (7th Cir. 2020).

[9] *Cf. Garcia v. Barr*, 960 F.3d 893, 897 (6th Cir. 2020) (holding motion for continuance is moot after removal from the country).

Board's docket."[10] An administrative closure would have no effect on an already concluded removal proceeding. After Ramos-Padilla's removal from the country, nothing is left to administratively close. Although his brief discusses our standard of review for motions to reopen, this case does not involve a motion to reopen. Nor would the beneficial purpose of the administrative procedure be served by reopening a case just to temporarily remove it from a docket. This is especially true now that the underlying reason for his motion, his SIJ application, has been denied.[11] We therefore dismiss this part of his petition for review for lack of jurisdiction.

B. Withholding of Removal

Ramos-Padilla also challenges the denial of his application for withholding of removal. An applicant may seek withholding of removal if he "establishes a clear probability of persecution" if returned home on account of "membership in a particular social group."[12] An applicant must establish that the group is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question."[13] At his merits hearing, the IJ asked Ramos-Padilla's counsel what social group he claimed membership in. His counsel

---

[10] *Arca-Pineda v. Att'y Gen.*, 527 F.3d 101, 104-05 (3d Cir. 2008) (quoting *Lopez-Reyes v. Gonzales*, 496 F.3d 20, 21 (1st Cir. 2007)).

[11] *See Qureshi v. Gonzales*, 442 F.3d 985, 988-89 (7th Cir. 2006) (holding motion for continuance moot after USCIS dismissed petition).

[12] *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 544, 547 (3d Cir. 2018) (internal quotation marks omitted); *see also* 8 U.S.C. § 1231(b)(3).

[13] *S.E.R.L.*, 894 F.3d at 547 (quoting *Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014)).

5

responded he was a "Honduran street child[], abandoned with limited to no protection,"[14] despite his application stating he was an "orphan."[15] The IJ then relied on *Escobar v. Gonzales*,[16] to conclude he had not asserted membership in a cognizable social group. The BIA affirmed, finding no meaningful distinction between "street child" and "orphan." Ramos-Padilla attempts to differentiate the two groups now. Whether a proffered group constitutes a particular social group is a legal conclusion that we review de novo.[17]

Ramos-Padilla acknowledges that "street child," characterized by poverty, homelessness, and youth, is too vague and all-encompassing under *Escobar*, but argues that "orphan" is precise and clear. After his merits hearing, however, he continued to alter his asserted particular social group, claiming membership in two new groups in his first appeal to the BIA: "family members of his father" and "bastard unrecognized orphaned and abandoned children of married Honduran men born to mistresses."[18] His continued attempt to elaborate on the meaning of "orphan" by proffering two related groups undermines his argument that the definition is precise and clear. Moreover, the minimal relevant differences between "orphan" and "street child" do not warrant vacating

---

[14] AR266.

[15] AR443. Ramos-Padilla faults the IJ for asking his counsel for clarification of his membership in a particular social group. We have no difficulty concluding that the IJ was acting well within his quasi-judicial role by asking Ramos-Padilla's counsel about the grounds for which he sought relief.

[16] 417 F.3d 363, 368 (3d Cir. 2005) (rejecting "street children" as a particular social group because "[p]overty, homelessness and youth are far too vague and all encompassing to be characteristics that set the perimeters for a protected group").

[17] *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 339 (3d Cir. 2008).

[18] Opening Br. at 47 n.8, 49; AR68-70.

the order of removal. On his application for relief, he asserted that living as an orphan made him fear a life of poverty, being alone, lack of protection, and vulnerability to gangs. These are the same grounds that his attorney argued for his protection as a Honduran street child, and the same assertions held to be "too vague and all-encompassing" to support a cognizable group in *Escobar*.[19] At least as alleged here, neither "orphan" nor "street child" is a particular social group under *Escobar*.[20]

### III.

For the foregoing reasons, we will dismiss Ramos-Padilla's petition for review to the extent it seeks review of the denial of his motion for administrative closure and deny the petition in all other respects.

---

[19] 417 F.3d at 364, 368.
[20] *See id*. at 368.